IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ANNIE KELLY                                                        PLAINTIFF

v.                                                CAUSE NO. 1:11CV471-LG-JMR

HARRISON COUNTY BOARD OF
SUPERVISORS and MELVIN
BRISOLARA, individually and as
Sheriff of Harrison County, Mississippi               DEFENDANTS

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** are the Motion for Summary Judgment [66] filed by

Sheriff Melvin Brisolara, the Motion for Summary Judgment [69] filed by the

Harrison County Board of Supervisors,[1] and the Motion to Strike [76] filed by

Brisolara.  The defendants seek judgment as a matter of law in this lawsuit filed by

the plaintiff Annie Kelly as a result of the termination of her employment.

Defendants also ask the Court to strike a portion of Kelly's response in opposition to

the Motions.  The defendants claim that Kelly was terminated for misuse of the

Harrison County Sheriff's Department's employee tuition assistance program and

for instructing a subordinate employee to misuse the program.  Kelly, however,

claims that she was terminated because of her race (African American), her gender,

her military service, and/or her age (forty-nine).  She also alleges that the Sheriff's

Department terminated her in retaliation for filing a claim with the Equal

Employment Opportunity Commission.  After reviewing the submissions of the

---

[1] Harrison County filed a Joinder [68] regarding Brisolara's Motion, and
Brisolara filed a Joinder [71] regarding Harrison County's Motion.

parties and the applicable law, the Court finds that the defendants' Motions for

Summary Judgment should be granted.

## FACTS

Annie Kelly began working for the Harrison County Sheriff's Department on

February 3, 2003.  (Compl. at 2, ECF No. 1).  She was eventually promoted to the

rank of Captain.  (Brisolara Mot., Ex. C at 1-2, ECF No. 66-3).  The Sheriff's

Department provides a college tuition assistance program for employees seeking

degrees in a field related to law enforcement.  (Brisolara Mot., Ex. K at 18-19, ECF

No. 66-11).  The Sheriff's Department policy provides that employees will be

reimbursed for tuition expenses based on the grades earned by the employee.  (*Id.*)

In 2010, Kelly participated in the tuition assistance program while pursuing

a degree in Administration of Justice from the University of Southern Mississippi.

(Compl. at 3, ECF No. 1).  In early 2011, Major Phillip Taylor of the Sheriff's

Department learned that Kelly and two other employees – Lieutenant Earnest

Thomas and Deputy Cheryl Brown –  were also receiving tuition assistance due to

their military service, and he filed a complaint against them.  (Brisolara Mot., Ex. K

at 2, 6, ECF No. 66-11).  An investigation of these employees was then conducted by

Lieutenant David Sanderson.  (*Id.* at 1-2).  During the investigation, Sanderson

learned that Kelly had received $9513.00 in Pell Grant Financial Assistance Funds

as well as $5503.20 in G.I. Bill Financial Assistance Funds due to her military

service.  He concluded that, as a result of the federal financial assistance Kelly

received, she only incurred $81.03 in out-of-pocket expenses, but she requested and

received "reimbursement" from the Sheriff's Department in the amount of $7231.62. (Brisolara Mot., Ex. K at 2-3, 16-39, ECF No. 66-11). Sanderson determined that, as a result of the county and federal tuition assistance provided, Kelly had received refunds from the University totaling $11,081.00. (*Id.* at 3).

The Sheriff's Department found that Kelly, Thomas, and Brown had inappropriately requested reimbursement for tuition while also receiving federal funds that covered the tuition. (*Id.* at 2-3). The Sheriff's Department ordered these employees to return the funds paid by the Sheriff's Department, and an administrative hearing was held to determine whether additional disciplinary action should be taken. (*Id.* at 4). The Sheriff's Department claims Kelly was terminated, because she was a high-ranking employee who had misled a subordinate employee – Thomas – that it was permissible to accept tuition reimbursement from Harrison County regardless of whether he had out-of-pocket expenses. (Brisolara Mot., Ex. C at 4, ECF No. 66-3). The Sheriff's Department also found that Kelly had failed to take responsibility for her actions. (*Id.*) Brown was terminated for failing to return the funds and for failing to appear at an administrative hearing concerning her conduct. (*Id.* at 5-6). The Sheriff's Department asserts that Thomas was demoted and a written reprimand was placed in his file, but he was not terminated because he accepted responsibility for his actions and he had been misled by his direct superior, Kelly. (*Id.* at 5).

The Sheriff's Department also conducted an investigation of all of the other

employees participating in the tuition assistance program.  (Brisolara Mot., Ex. K

at 4, ECF No. 66-11).  As a result of the expanded investigation, the Sheriff's

Department learned that one other employee had misused the program, but the

employee was no longer employed by the Department at the time of the

investigation.  (*Id.*)

Kelly filed the present lawsuit asserting the following claims against the

Harrison County Board of Supervisors and Sheriff Melvin Brisolara in both his

individual and official capacities: Title VI and Title VII racial discrimination, Title

VI and Title VII gender discrimination, retaliation, age discrimination, violation of

the Uniformed Services Employment and Reemployment Rights Act, breach of

fiduciary duty, breach of contract, gross breach of contract, respondeat superior,

breach of the duty of good faith and fair dealing, negligent infliction of emotional

distress and mental anguish, intentional and/or gross infliction of emotional

distress and mental anguish, negligence per se, gross negligence, negligent

supervision/training, and negligent hiring/retention.  (Compl., ECF No. 1).  She

seeks compensatory and punitive damages.  (*Id.*)

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that

there is no genuine issue of material fact that the movant is entitled to prevail as a

matter of law on any claim.  Fed. R. Civ. P. 56.  The movant bears the initial burden

of identifying those portions of the pleadings and discovery on file, together with

any affidavits, which it believes demonstrate the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant

carries its burden, the burden shifts to the non-movant to show that summary

judgment should not be granted.  *Celotex Corp.*, 477 U.S. at 324-25.  The non-

movant may not rest upon mere allegations or denials in its pleadings but must set

forth specific facts showing the existence of a genuine issue for trial.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I.  KELLY'S TITLE VI AND TITLE VII CLAIMS AGAINST BRISOLARA IN HIS INDIVIDUAL CAPACITY

In his Motion for Summary Judgment, Brisolara first asserts that there is no

individual liability for employees under Title VII.  In the alternative, he argues that

he is entitled to qualified immunity.

It is "settled Fifth Circuit law" that "employees may not be sued for damages

in their individual capacities."  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258,

262 (5th Cir. 1999); *see also Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir.

2002).  Similarly, "Title VI permits suits only against public or private entities

receiving funds and not against individuals . . . ."  *Muthukumar v. Kiel*, No. 11-

10517, 478 F. App'x 156, 158-59 (5th Cir. May 30, 2012); *see also* 42 U.S.C. § 2000d.

As a result, Brisolara cannot be held individually liable under Title VI or

Title VII.  Since qualified immunity only applies to claims filed against employees

in their individual capacities, it is not necessary for the Court to determine whether

Brisolara is entitled to qualified immunity with regard to Kelly's Title VI and Title

VII claims.  *See Walker v. Howard*, 517 F. App'x 236, 237 (5th Cir. 2013).  The

Court finds that all of Kelly's Title VI and Title VII claims filed against Brisolara in his individual capacity must be dismissed with prejudice.

## II. RACE DISCRIMINATION

Kelly has attempted to plead race discrimination claims under both Title VI and Title VII.

Title VI provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To prevail on a claim for relief under Title VI, a private litigant must prove: (1) that the defendant engaged in *intentional* discrimination based on race, color, or national origin; and (2) that the defendant received federal financial assistance." *Pathria v. Univ. of Tex. Health Sci. Ctr.*, No. 13-50068, 2013 WL 3090280 (5th Cir. June 20, 2013) (citing 42 U.S.C. § 2000d; *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001)). Furthermore, the "primary objective of the Federal financial assistance [must be] to provide employment." 42 U.S.C. § 2000d-3.

Kelly only makes a passing reference to Title VI in her complaint. (*See* Compl. at 5, ECF No. 1). She does not allege that the Harrison County Board of Supervisors has received federal financial assistance to provide employment. Furthermore, she has not provided any evidence of intentional discrimination on the part of the defendants. The defendants have produced testimony and evidence indicating that their actions were not discriminatory. Therefore, this claim must be

dismissed.

> Title VII provides:
>
> It shall be an unlawful employment practice for an employer– (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

42 U.S.C. § 2000e-2.  Absent direct evidence of discrimination, claims of race discrimination are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In order to set forth a prima facie case of employment discrimination under Title VII, a plaintiff must demonstrate (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment decision; and (4) that she was replaced by someone outside the protected class, or in the case of disparate treatment, that similarly situated persons outside her protected class were treated more favorably under circumstances that were "nearly identical" to hers.  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001).

It is undisputed that Kelly is a member of a protected class, because she is African American.  It is also undisputed that she was qualified for her position, and that she suffered an adverse employment decision.  However, Kelly has not produced any evidence or testimony demonstrating that she was replaced by a person outside her protected class or that similarly situated persons outside her protected class were treated more favorably.  The defendants have produced evidence that Kelly's position was not filled after she was terminated.  (Brisolara

Mot., Ex. C at 4, ECF No. 66-3). Furthermore, while Kelly initially claimed that only African Americans were investigated for misuse of the tuition assistance program, she admitted at her deposition that she did not know how many people were investigated. (Brisolara Mot., Ex. A at 121, ECF No. 66-1). On the other hand, the defendants have provided testimony and evidence indicating that the Sheriff's Department conducted an investigation of all employees participating in the tuition assistance program, regardless of their race. (Brisolara Mot., Ex. C, ECF No. 66-3; Brisolara Mot., Ex. K, ECF No. 66-11).

Finally, Kelly testified that she was aware of a white male who accepted multiple reimbursements, but he was never investigated or punished. (Brisolara Mot., Ex. A at 123, ECF No. 66-1). However, Kelly does not remember the name of the individual and she was not able to provide any information at her deposition that would help identify him. (*Id.* at 123-24; 174-77). She also admitted that she did not know whether he was receiving tuition assistance from the Sheriff's Department to cover expenses that were paid by the federal government. (*Id.* at 177). Based on the scant information that Kelly has provided concerning this individual, she would not be able to demonstrate that he was "similarly situated" or that his circumstances were "nearly identical" to hers. As a result, the Court finds that Kelly has not set forth a prima facie case for race discrimination under either Title VI or Title VII against the Harrison County Board of Supervisors or Brisolara in his official capacity, and these claims must be dismissed with prejudice.

## III. GENDER DISCRIMINATION

As explained previously, in order to set forth a prima facie case of employment discrimination under Title VII,[2] a plaintiff must demonstrate (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment decision; and (4) that she was replaced by someone outside the protected class, or in the case of disparate treatment, that similarly situated persons outside her protected class were treated more favorably under circumstances that were "nearly identical" to hers. *Okoye*, 245 F.3d at 513.

Once again, only the fourth element is at issue. Kelly claims that Earnest Thomas was treated more favorably since he was demoted for misusing the tuition assistance program while she was terminated. The Court disagrees. The record before the Court indicates that Thomas was not similarly situated to Kelly and their circumstances were not nearly identical. The defendants have produced testimony showing that Kelly was Thomas' direct supervisor, and she had told him that it was permissible to accept 100 percent tuition assistance from Harrison County while also receiving fifty percent assistance from the Veteran's Administration. (Brisolara Mot., Ex. C at 5, ECF No. 66-3; Ex. E at 18, ECF No. 66-5; Ex. L at 2, ECF No. 66-13). Furthermore, the defendants produced testimony

---

[2] Kelly attempts to allege a gender discrimination claim pursuant to Title VI, but the language of Title VI only prohibits discrimination on the basis of race, color, or national origin. *See* 42 U.S.C. § 2000d. Nevertheless, even if Title VI could be construed to prohibit gender discrimination, Kelly has not provided any evidence of receipt of federal funding for employment purposes or intentional discrimination based on gender.

indicating that Thomas had accepted responsibility for his actions, while Kelly had not. (*Id.*)  Kelly has not provided testimony or evidence that refutes the defendants' testimony and evidence.  As a result, the defendants are also entitled to summary judgment as to Kelly's gender discrimination claim.

## IV.  RETALIATION

In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she participated in an activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).

Kelly has not submitted an affidavit or evidence in opposition to the defendants' Motions; therefore, the Court can only look to the allegations of her Complaint and the defendants' evidence while ruling on the Motions.  In her Complaint, Kelly claims that the defendants terminated her in retaliation for filing a complaint with the Equal Employment Opportunity Commission.  (Compl. at 6, ECF No. 1).  She claims that the Warden of the jail where she worked asked her about her EEOC paperwork on the morning of her administrative hearing, and she told him she had filed a complaint.  (*Id.*)  Kelly alleges, "The Warden asked if she was sure she wanted to do that and Ms. Kelly said yes."  (*Id.*)

The Warden, Donald Cabana, testified at his deposition that he was merely asking Kelly to give the Sheriff Department's administrative process a chance to work before pursuing an EEOC claim.  (Brisolara Mot., Ex. F at 34-35, ECF No. 66-

6).  Cabana testified that, to the best of his knowledge, he did not bring Kelly's

EEOC complaint to Brisolara's attention or have a "big discussion" with him about

it.  (*Id.* at 38).

In an Affidavit, Brisolara testified that he has the exclusive authority to hire

and fire employees of the Sheriff's Department and that he made the decision to

terminate Kelly.  (Brisolara Mot., Ex. C at 1, 4, ECF No. 66-3).   Brisolara also

stated that he was not aware that Kelly had filed an EEOC charge of discrimination

until after she was terminated.  (*Id.* at 7).  He also was unaware of the conversation

between Cabana and Kelly.  (*Id.*)

Since there is no evidence that Brisolara was aware of Kelly's EEOC charge

or her allegations of discrimination when he made the decision to terminate Kelly,

Kelly cannot establish a prima facie case of retaliation.

## V.  AGE DISCRIMINATION

The Age Discrimination in Employment Act provides: "It shall be unlawful

for an employer . . . to discharge any individual or otherwise discriminate against

any individual with respect to his compensation, terms, condition, or privileges of

employment, because of such individual's age."  29 U.S.C. §623(a)(1).  A plaintiff

relying on circumstantial evidence in support of her age discrimination claim must

first set forth a prima facie case of age discrimination by demonstrating: (1) that

she was discharged; (2) she was qualified for the position at issue; (3) she was

within the protected class (at least forty years of age); and (4) she was replaced by

someone younger or outside the protected class, or otherwise discharged because of

her age.  *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007); *see also* 29 U.S.C. §631(a).

As explained previously, the record before the Court indicates that Kelly's position was never filled after her termination, and she has not provided any evidence or testimony tending to show that she was discharged or treated differently because of her age.  As a result, the defendants are entitled to summary judgment regarding Kelly's age discrimination claim.

## VI.  UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT

The Uniformed Services Employment and Reemployment Rights Act ("USERRA") provides that a person "shall not be denied employment, reemployment, retention in employment, promotion, or any benefit of employment" because of the person's military service.  38 U.S.C. § 4311(a).  An employer violates USERRA when "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in an employment decision.  38 U.S.C. § 4311(c)(1).  An employer is not liable under USERRA if it "can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service."  *Id.*

Kelly claims that the defendants violated USERRA, because "the people that were investigated were V.A. people."  (Brisolara Mot. Ex. A at 126, ECF No. 66-1).  However, she admitted at her deposition that she did not know how many people

were investigated, while the defendants have provided testimony and evidence

indicating that the Sheriff's Department conducted an investigation of all of the

employees participating in the tuition assistance program, regardless of their

military service.  (Brisolara Mot., Ex. A at 121, ECF No. 66-1; Ex. C, ECF No. 66-3;

Ex. K, ECF No. 66-11).  Furthermore, the Sheriff's Department investigated not

only receipt of veterans' benefits but also receipt of Pell Grants.  (*See* Brisolara

Mot., Ex. K, ECF No. 66-11).  None of the evidence or testimony before the Court

indicates that the Sheriff's Department terminated her due to her military service.

Therefore, the defendants are entitled to summary judgment as to Kelly's USERRA

claim.

## VII.  STATE LAW CLAIMS

### A.  BREACH OF FIDUCIARY DUTY

The Mississippi Supreme Court has held:

> Although every contractual agreement does not give rise to a fiduciary
> relationship, in Mississippi, such a relationship may exist under the
> following circumstances: (1) the activities of the parties go beyond their
> operating on their own behalf, and the activities [are] for the benefit of
> both; (2) where the parties have a common interest and profit from the
> activities of the other; (3) where the parties repose trust in one
> another; and (4) where one party has dominion or control over the
> other.

*Univ. Nursing Assoc., PLLC v. Phillips*, 842 So. 2d 1270, 1274 (¶9) (Miss. 2003).

"One of the key elements of a fiduciary relationship is 'the fiduciary's control of the

supervised party's property,' and that 'things of value such as land, monies, a

business, or other things of value must be possessed or managed by the dominant

party.'" *Id.* at 1275 (¶ 13). "No Mississippi court has created a fiduciary relationship or allowed a claim for breach of a fiduciary duty based on a mere employment contract or relationship between an employer and employee." *Watkins v. United Parcel Serv., Inc.*, 797 F. Supp. 1349, 1362 (S.D. Miss. 1992) (citing *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 211 (5th Cir. 1986)).

In her Complaint, Kelly alleges, "Defendants accepted fiduciary duties to Ms. Kelly by hiring her and thereby entering into a contract with her." (Compl. at 7, ECF No. 1). Nevertheless, neither Kelly nor her attorney have been able to identify or produce an employment contract, and Kelly's attorney conceded at her deposition that she was an at will employee. (Brisolara Mot., Ex. A at 128, ECF No. 66-1). Furthermore, contrary to Kelly's assertions, a mere employment or contractual relationship does not in and of itself create a fiduciary duty under Mississippi law. There is no evidence that the defendants controlled Kelly's property or that the relationship between Kelly and the defendants exceeded that of a typical at will employment relationship. As a result, the defendants did not owe a fiduciary duty to Kelly, and her breach of fiduciary duty claim must be dismissed.

**B. BREACH OF CONTRACT, GROSS BREACH OF CONTRACT, AND BAD FAITH**

In Kelly's Complaint, she alleges that the defendants acted in bad faith by breaching the implied covenant of good faith and fair dealing contained in her employment contract. (Compl. at 10, ECF No. 1). "All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Limbert*

*v. Miss. Univ. for Women Alumnae Ass'n*, 998 So. 2d 993, 998 (¶11) (Miss. 2008).

However, as explained previously, there is no evidence that Kelly entered into a

contract with any of the defendants, and her attorney has conceded that she was an

at will employee.  As a result, Kelly's breach of contract, gross breach of contract,

and bad faith claims must be dismissed with prejudice.

### C.  NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In interrogatory responses, Kelly stated that she was not seeking damages

for emotional injury, distress, and/or mental anguish.  (Brisolara Mot., Ex. D, Resp.

to Int. No. 20, ECF No. 66-4).  Since Kelly has abandoned the emotional distress

claims pled in her Complaint, these claims are dismissed.

### D.  RESPONDEAT SUPERIOR, NEGLIGENT SUPERVISION/TRAINING, NEGLIGENT HIRING/RETENTION, NEGLIGENCE PER SE, AND GROSS NEGLIGENCE

The defendants argue that Kelly's respondeat superior[3] and negligence claims

are barred by the exclusivity provision of the Mississippi Workers' Compensation

Act, Miss. Code Ann. § 71-3-9, because the claims arose by virtue of her

employment.  The Mississippi federal courts have held that negligence claims such

as those asserted by Kelly are barred by the exclusivity provision of the Act.  *See,*

*e.g., Ford v. Madison HMA, Inc.*, 867 F. Supp. 2d 843, 849 (S.D. Miss. 2012) (holding

that negligence, emotional distress, negligent hiring, supervision, and retention

---

[3] "The doctrine of respondeat superior holds an employer liable for the negligent acts of its employee performed in the course and scope of the employment."  *Keith v. Peterson*, 922 So. 2d 4, 10 (¶19) (Miss. Ct. App. 2005).

claims were barred); *Renick v. Nat'l Audubon Soc'y, Inc.*, No. 3:07CV63-SAA, 2009

WL 377288 at *6 (N.D. Miss. Feb. 12, 2009) (explaining that "[t]he courts have

consistently held that [the exclusivity] provision of the Comp Act does indeed bar

any tort claim grounded in negligence").  Therefore, Kelly's respondeat superior,

negligent supervision/training, negligent hiring/retention, negligence per se, and

gross negligence claims must also be dismissed with prejudice.

## VIII. BRISOLARA'S MOTION TO STRIKE

Brisolara asks the Court to strike the following allegations in Kelly's

Response [74]: (1) "Sheriff Melvin Brisolara has visibly and on record, shown his

open disdain for Plaintiff Annie Kelly in his body language . . . during his deposition

and appearing to 'leap across the table' toward her;" and (2) "[the defendants']

attempts to discredit [Kelly] through less than credible reference in Plaintiff's

attempts to seek new employment, are ALL matters that Plaintiff Constitutionally

deserves the right to address before a jury of her peers."  (Kelly Resp. at 6, ECF No.

74).  Kelly did not provide any evidence to support these assertions or any of the

other assertions made in her Response.  For this reason, the Court finds that these

arguments do not establish the existence of a genuine issue of material fact.  As a

result, the Motion to Strike is moot.

### CONCLUSION

For the foregoing reasons, the Court finds that the defendants' Motions for

summary judgment should be granted.

-16-

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [66] filed by Melvin Brisolara and the Motion for Summary Judgment [69] filed by the Harrison County Board of Supervisors are **GRANTED**. The plaintiff Annie Kelly's claims against Melvin Brisolara and the Harrison County Board of Supervisors are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion to Strike [76] filed by Melvin Brisolara is **MOOT**.

**SO ORDERED AND ADJUDGED** this the 31st day of October, 2013.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE